Complainant, the owner of fifty shares of preference stock of defendant, challenges the validity of certain readjustments of its capital structure which, he contends, will result in violations of the "vested" rights of holders of preference stock, particularly the right to unpaid accumulated dividends. *Page 170 
Prior to the changes complained of, defendant had two classes of capital stock: preference, of which 100,000 shares were authorized and outstanding; and common, of which 400,000 shares were authorized and 200,000 outstanding. These classes were issued under defendant's amended certificate of incorporation, dated January 22, 1926, which will be referred to as the original certificate or charter, in order to avoid confusion with a later amendment. Under the charter, each share of preference stock entitles its holder to cumulative dividends of four dollars per annum; has a liquidation value of fifty dollars in addition to unpaid accumulated dividends; is redeemable at the option of the corporation at fifty-five dollars plus accumulated dividends; and is convertible at the option of the holder into one share of common stock. The common stock is by the charter entitled to distributions of dividends, and of the corporate assets upon dissolution, after satisfaction of the priorities of the preference stock.
At the end of 1937, the corporation had a consolidated deficit from operations of $3,167,228.26, after deducting capital surplus. Cumulative dividends unpaid on the preference stock amounted to $30 per share, or a total of $3,000,000.
In 1938, defendant put forward a plan of recapitalization, which was subsequently approved and adopted by the holders of more than a majority of stock of both classes. The plan proposed an amendment of the charter to authorize three classes of stock, described briefly as follows:
Prior preference stock (100,000 shares), being preferred over the other two classes, each share having a par value of twenty dollars; entitled to dividends of two dollars per annum, cumulative after January 31, 1941; with a liquidation value of twenty-five dollars, plus accumulated dividends; redeemable at the corporation's option after January 1, 1942, at thirty-five dollars, plus accumulated dividends.
Preference stock (100,000 shares) with stated rights and preferences as in the charter.
Common stock (500,000 shares) having a par value of one dollar per share, entitled to distributions after satisfaction of the priorities of the prior preference and preference stock. By the amendment, each share of the old common stock is converted into two-fifths of a share of new common stock.
Under the plan, each share of preference stock may be exchanged for one share of prior preference stock and three shares of new common stock. Each share of stock of all classes under the charter, as well as the amendment, is entitled to one vote.
The amount of capital represented on the corporate books by the preference stock had been $5,000,000, and by the old common stock, $750,000. The plan proposed a reduction of defendant's capital from $5,750,000 to $2,380,000; and an allocation of capital to each share of the three classes of the amendment, as follows: prior preference stock, $20; preference stock, $23 (instead of $50 before the reduction in capital); common stock, $1 (instead of $3.75 for each share of old common). It was intended that the reduction of capital should eliminate the consolidated deficit and give rise to a surplus in excess of $200,000.
The requisite corporate action having been taken, an amendment to the certificate of incorporation and a certificate of reduction of capital as contemplated by the plan were filed, on August 5, 1939, in conformity with the requirements of Sections 26 and 28 of the Delaware Corporation Law, Rev. Code of Del. 1935, Secs. 2058, 2060. Approximately 88% of the preference stock has been exchanged under the plan. Complainant still holds his shares.
In December, 1939, a dividend on the prior preference stock of fifty cents per share was declared. It has not yet been paid because of a restraining order entered by this court without objection of defendant. At the hearing, the parties stipulated that a copy of the resolution authorizing this dividend should be deemed to be a part of the bill of complaint. The resolution states that the dividend is declared "out of the net profits of the Corporation since the filing on August 5, 1939, of the Certificate of Amendment of the Certificate of Incorporation of the Corporation, as amended". No provision has been made for a dividend on the preference stock or on the common stock.
The changes under the plan are not charged to be unfair. What complainant asserts is that they violate his rights as a holder of preference stock and are invalid under the laws of Delaware as to all preference stockholders. In addition to the *Page 171 
prayers for an adjudication that the amendment, plan of recapitalization, and reduction of capital are invalid in so far as they purport to modify the rights conferred by the charter upon the preference stockholders, an injunction is prayed for to prevent the payment of any dividends on any classes of stock until all accumulated and current dividends on the preference stock have been paid; to prevent the redemption or retirement of any other stock until all of the preference stock has been redeemed or retired; to prevent the distribution of any sums upon liquidation to any classes of stock until the holders of the preference stock have been paid in full the amounts to which they were entitled prior to the amendment; and finally to prevent the voting of any stock in any manner which will violate or impair the voting rights conferred upon the holders of the preference stock prior to the amendment.
[1] The source of the rights of a shareholder is in the charter and the law. Certain of these rights are under the law subject to change. The scope of permissible alterations of such rights has been considered by the courts of this State. Morris. et al. v. American Public Utilities Co., 14 Del.Ch. 136, 122 A. 696.; Keller v. Wilson Co., 21 Del.Ch. —, 190 A. 115; Consolidated Film Industries v. Johnson, 21 Del.Ch. —, 197 A. 489; Federal United Corporation v. Havender, Del. Sup., 11 A.2d 331. Section 26 of the Delaware Corporation Law, which permits the amendment of corporate charters, authorizes changes in the preferences incident to the ownership of preferred stock. Pertinent parts of this section as it existed at the date of defendant's charter, January 22, 1926, are quoted in the Morris case. Defendant's charter provides specifically that all rights conferred by it upon stockholders are subject to the reservation of the right to amend, alter, change, or repeal any of its provisions "in the manner now or hereafter prescribed by statute". Section 26, as it existed when the amendment in question was adopted, provides that "Any corporation * * * may * * * amend its Certificate of Incorporation * * * by increasing or decreasing its authorized capital stock or reclassifying the same, by changing the number, par value, designations, preferences, or relative, participat-ing, optional, or other special rights of the shares, or the qualifications, limitations or restrictions of such rights, or by changing * * * shares without par value into shares with par value either with or without increasing or decreasing the number of shares; * * *".
[2] Now, it is important to bear in mind that although the plan of recapitalization permits an exchange of preference stock for prior preference and common stock, nevertheless, the amendment does not purport to extinguish any of the rights of the preference stock; nor to convert that stock into any other stock; nor to require its exchange for anything in substitution. So that, for all that the amendment provides, complainant may continue to hold his shares and the only alteration in his rights will be the consequences of the issuance of the prior preference stock. This charter contains nothing to prevent the creation of classes of stock having priorities over the pre-existing classes. On the other hand, it does disclose that the possibility of the authorization of new classes was contemplated from the beginning, for subdivision (h) of Article Fourth provides that:
"No holder of stock of the corporation of any class shall be entitled as of right to subscribe to and/or purchase any additional or increased stock of any class, whether now or hereafter authorized, * * *."
The words which I have italicized are twice repeated elsewhere in the same paragraph. The language of Chancellor Wolcott in the Morris case, where a preferred stock was by amendment subordinated to two classes of prior preferred stock, is apt to describe the rights of the preference stock here [14 Del.Ch. 136, 122 A. 701]:
"The original preferred stock enjoyed under the articles of incorporation a preference over the common stock. Nowhere was it provided that it should itself be free from the burden of a preference in favor of classes of stock to be created. When it was issued it was the senior among the then authorized classes. Now it is junior to two new classes * * *. What has occurred, therefore, is that the preference which the original preferred stock enjoyed has been changed or altered. This is not so, however, when it is *Page 172 
thought of in relation to the common stock, for the amendment in no wise touches or disturbs the preference over the common stock which the certificate originally created. But it is so when it is thought of in its relation to earnings and assets, for in relation to these it no longer stands first in claim after debts but third, following after the two new classes. In this sense, the preference originally enjoyed by the preferred stock has been altered or changed. Section 26, which as before indicated is to be read into the original certificate of incorporation, * * very clearly indicates that a change or alteration of any preference may be made. One of the conditions upon which the complainants as preferred stockholders enjoyed this preference was that it might at any time be changed and altered upon the approval of a majority of its holders. It is apparent that the change now being considered was made in strict pursuance of one of the terms of the contract which the members of the corporation had adopted for their governance. There can be no valid objection under this head."
But complainant says that this amendment should be construed to mean that the right of the prior preference to receive dividends before the preference stockholders relates not to the accumulated dividends, but solely to dividends accruing from and after the effective date of the amendment. The pertinent language of the amendment is:
"While any of the prior preference stock is outstanding, no dividend shall be declared or paid on the preference stock or on the common stock prior to January 1, 1942, unless and until a full annual dividend of $2.00 per share on the prior preference stock payable during the then current calendar year shall have been paid or declared and a sum sufficient for the payment thereof set apart, nor on or after January 1, 1942, unless and until the full dividend on the prior preference stock for the current quarterly dividend period, and all accumulated unpaid dividends thereon, shall have been paid or declared and a sum sufficient for the payment thereof set apart."
[3] The expression "no dividend" impels the construction that the prior preference stock shall be paid dividends before dividends of any kind are paid on the preference stock, whether accumulated or current.
Complainant next urges that he has an indestructible vested interest in the accumulated, unpaid dividends on his preference stock; and that the payment at any time of a dividend to the holders of prior preference stock without a corresponding payment on account of the accrued unpaid dividends on the old stock constitutes an effective destruction of his vested property interest. He relies on the cases of Keller v. Wilson Co., supra, and Consolidated Film Industries v. Johnson, supra, as well as Patterson v. Durham Hosiery Mills, 214 N.C. 806, 200 S.E. 906, and General Inv. Co. v. American Hide Leather Co., 98 N.J.Eq. 326,129 A. 244, 44 A.L.R. 60.
Turning to the charter to ascertain what are the rights of the preferred shareholders to dividends, we find that it provides that "The holders of the preference stock shall be entitled to receive, when and as declared, out of the surplus or net profits of the corporation, cumulative dividends at the rate of, but never exceeding Four dollars ($4.00) per share per annum * * *. Dividends as aforesaid on the preference stock for the current and all past quarterly dividend periods shall be paid, or declared and the amount thereof set apart, before any dividends shall be paid or declared on the common stock", so that any deficiency in the cumulative dividends "shall be paid, or declared and the amount thereof set apart, before any dividends shall be paid, or declared upon and/or set apart for, the common stock". It further provides that "The preference stock shall be preferred as to both earnings and assets and, in the event of any liquidation * * * or upon any distribution of its capital * * * the holders of the preference stock shall be entitled, before any assets of the corporation shall be distributed among or paid over to the holders of the common stock, to be paid a sum equal to Fifty dollars ($50.00) per share held", together with unpaid accumulated dividends.
[4] In other words, the right conferred is the right to exact that the common stockholders shall not receive dividends (or distributions in liquidation or of capital) until dividends at the stated rate have been paid to the preference stockholders. True it is that under the laws of Delaware, a preferred stockholder's right to dividends accrued through lapse of time is a "vested right of *Page 173 
property" or a "fixed, contractual right", as these expressions are used in the Keller and Johnson cases. Nevertheless, these cases by no means hold that language such as that of the charter of this defendant should be construed to express or imply an undertaking that accumulated dividends will in fact, and at all events, be paid; nor an undertaking that the corporation will not make changes, permitted by the statutes, in its capital structure, which may as a consequence reduce the probabilities of actual payment of the dividends. Compare Federal United Corporation v. Havender, supra. The new prior preference stock has no effect upon the right of the preference to participate in the corporate assets before the common, which is all that the charter stipulated when the preference stock was issued. The preference stockholders are entitled to adequate protection and enforcement of the rights lawfully conferred upon them; but that does not mean an enlargement of the old, or an addition of new rights.
The Keller and Johnson cases dealt with accumulated unpaid dividends to which preferred stockholders were entitled as against common. Otherwise, the situations were wholly different from that now before me, for in each of the cited cases there was an attempt to extinguish the right to accumulated dividends. Here, that right is preserved.
[5] It is directly determined in the Morris case that the payment of dividends on a new prior preferred stock, under circumstances such as the present, does not destroy the right of the old preferred stockholders to accumulated dividends, and hence, should not be enjoined. In that case, after holding that an attempted destruction of accumulated dividends was invalid, Chancellor Wolcott said:
"They [the complainants] seek an injunction against the payment of dividends on other classes of preferred stock until their accrued dividends are paid. This they are not entitled to for the reason that by the terms of the original certificate authorizing the preferred stock, whatever preference it has can be before dividends on common stock only. The corporation has neither declared nor set apart from earnings any sum for a dividend on the common stock, nor is it threatening to do so. The payment of dividends to the two preferred classes created by the amendment which come in ahead of the class which the complainants hold is not in violation of the rights secured to them by their contract with the corporation and the injunction should, therefore, not issue as prayed."
The Morris case has been cited with approval by the Supreme Court of Delaware in Penington v. Commonwealth Hotel Const. Corp.,17 Del.Ch. 394, 155 A. 514, 75 A.L.R. 1136, and in Keller v. Wilson Co., supra. With its reasoning I am in entire accord. Any inconsistent views expressed in the North Carolina and New Jersey cases, cited by the complainant, will not be adopted here.
From the reasons upon which is based a refusal to enjoin the payment of dividends, it follows necessarily that complainant has shown no ground justifying interference with any of the rights which the amendment purports to confer upon the prior preference stockholders.
As to the reduction of defendant's capital, Section 28 of the Delaware Corporation Law authorizes precisely what was. done here: a reduction of capital "by reducing the amount of capital represented by shares of stock having no par-value". Defendant's action was admittedly in compliance with the statute. The bill contains no allegations of fraud or of circumstances which in anywise impugn its validity.
Based upon the facts presented, the plan, amendment, and reduction of capital are lawful and proper, and the injunction prayed for should be denied.
An order sustaining the demurrer will be advised.
 *Page 380