DUNN v. WILSON & CO., Inc.

No. 1115.

District Court, D. Delaware.

Dec. 11, 1943.

James R. Morford, of Wilmington, Del., for plaintiff.

Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., for defendant.

LEAHY, District Judge.

After the opinion was filed in the case at bar, a decree in plaintiff's favor was directed to be submitted. See, D.C., 51 F.Supp. 655. Defendant objects to plaintiff's proposed form of decree. While the major issues determined here with respect to defendant's plan of reclassification have been both directly and indirectly involved in much litigation in Delaware, Keller v. Wilson & Co., 21 Del.Ch. 13, 180 A. 584; Id., 21 Del.Ch. 391, 190 A. 115; Id., 22 Del.Ch. 175, 194 A. 45; Frank v. Wilson & Co., Del.Ch., 9 A.2d 82; Id., Del.Ch., 32 A.2d 277; Bay Newfoundland Co. v. Wilson & Co., Del.Ch., 4 A.2d 668; Id., Del.Ch., 11 A.2d 278; Id., Del.Ch., 28 A.2d 157; Sapperstein v. Wilson & Co., 21 Del.Ch. 139, 182 A. 18, none of the Delaware cases ever ripened into a decree.[1] The question of what form the decree should take finds, therefore, no answer in any Delaware decision. A full discussion of the details of defendant's plan of reclassification may be found in 51 F.Supp. 657, 658, and in the cases cited supra. For our purposes we are merely concerned with that phase of the plan which provides that for the exchange of each share of Class A stock five shares of common will be received.

I. *The Proposed Decree.* The prayers contained in the complaint sought (a) an injunction against defendant "from carrying out the provisions of the amendment * * * from giving or allowing any effect whatever to the said amendment, and from failing to recognize or refraining from recognizing any and all rights of the plaintiff as a holder of Class A stock, as such rights existed prior to the adoption of said amendment, and from paying any dividends to the holders of the common stock until full dividends * * * shall have been paid on the Class A stock * * * "; (b) a finding that the amendment to defendant's charter was void and should be cancelled; and (c) that plaintiff recover from defendant such money as shall compensate her for losses sustained by defendant's unlawful acts, together with costs and counsel fees. Plaintiff contends that relief responsive to these prayers should be embodied in the decree, in view of the opinion filed. The decree submitted provides that the court should: (a) declare plaintiff's 500 shares of Class A are validly issued and presently outstanding; (b) that the amendment to defendant's charter is void in respect to said shares; (c) enjoin defendant from carrying out the provisions of the amendment with respect to plaintiff's shares; enjoin defendant from failing to recognize all the preference rights attaching to such shares under the provisions of the charter as it existed before the amendment; enjoin defendant from paying dividends to the holders of the common stock until full dividends at the rate of $5 per share per annum from October 31, 1930 shall have been paid on plaintiff's Class A shares; and (d) that the court order defendant to pay plaintiff on account of said 500 shares of Class A stock the sum of $18,125 which represents the amount of all accrued and unpaid dividends due plaintiff, together with interest. The proposed decree contains the usual provision for costs.

II. *Defendant's Objections.* (A) Defendant contends that, since the corporate charter is a contract, plaintiff's rights, as a stockholder, are, under the Delaware law, contractual in nature; Gaskill v. Gladys Belle Oil Co., 16 Del.Ch. 289, 146 A. 337; Hartford Accident & Indemnity Co. v. W. S. Dickey Clay Mfg. Co., Del.Ch., 21 A. 2d 178, affirmed, Del.Sup., 24 A.2d 315; Aldridge v. Franco Wyoming Oil Co., Del. Ch., 7 A.2d 753; Morris v. American Public Utilities Co., 14 Del.Ch. 136, 122 A. 696; hence, if defendant has invaded plaintiff's contractual rights arising from that charter, there is simply a breach of contract. It follows, says defendant, that when plaintiff

---

[1] This, for the reason that either settlements occurred, or the courts denied relief on grounds found by reference to the cases cited.

sought the aid of this court, she was seeking to protect a contract right, but the acts complained of having already occurred, this court can make no finding except that there has been a breach of plaintiff's contract with defendant, whereas plaintiff, if she had acted promptly, could have sought a decree for specific performance of her contract through an injunction enjoining such breach. Defendant relies on Jones v. Maxwell Motor Co., 13 Del.Ch. 76, 115 A. 312, 315, where the Chancellor said: "Injunctions will not issue when the thing to be enjoined has been done, and cannot be undone, notwithstanding the fact that the complainant may have had a perfect ground for complaint." If this be the proper view, the only remedy left plaintiff is one for damages, either ex contractu or ex delicto.[2]

But, I do not understand defendant's position to be that we should ignore thousands of pages of testimony taken at the trial of this cause, disregard the many hundreds of exhibits, forget the voluminous briefs and long arguments, and consider the court's opinion a nullity, by dismissing the complaint and instructing plaintiff to start an action at law for breach of her contract with defendant. If I am in error and defendant is insisting that plaintiff start afresh, then I reject such argument as irrational in the light of the facts of this litigation. Defendant might have attacked the equity jurisdiction of this court initially on the basis of a sufficiency of a legal remedy, but by having filed its pleadings and gone to trial it has waived any question concerning the adequacy of a legal remedy. American Mills Co. v. American Surety Co., 260 U.S. 360, 43 S.Ct. 149, 67 L.Ed. 306. In any event, it seems strange that defendant has waged bitter battle in the Delaware chancery court for the past eight years in the many cases cited supra without once raising the point of adequacy of legal remedy. For present purposes, I dispose of the equity jurisdictional point on the ground that if it exists it has been waived by defendant. In any event, I believe such jurisdiction is implicitly recognized in the many hundreds of cases involving stockholders' rights determined by the Delaware court of chancery during the past forty-four years.

(B) The amendment to defendant's charter was filed with the Secretary of State of Delaware prior to institution of the present action.[3] Defendant argues further that the aid of this court having been invoked after the Class A stock ceased to be —on the theory that the filing of the amendment constitutes a self-executing abolishment of this class of shares—it is beyond the power of the court to restore the status quo ante; hence as plaintiff's Class A stock has been changed into common stock, she may now claim, at most, the required number of common shares she is entitled to under the plan of reclassification, as of February 23, 1935. In support of this view, defendant concedes that in effecting the transmutation of plaintiff's Class A shares into common shares defendant may have invaded plaintiff's individual rights for which she is entitled to a remedy but says defendant "conceding also that the remedy might be injunctive in nature to prevent the consummation of any threatened invasion, once the steps provided for by the statute have been taken the statutory transmutation becomes an accomplished fact. Although the injured stockholder might be entitled to a remedy, to be appropriate the remedy would have to be one consistent with the fact of transmutation."

I think this particular approach of defendant is sound. All that my former opinion was intended to accomplish was to protect, under the authority of Keller v. Wilson & Co., supra, plaintiff's rights to all unpaid accrued dividends. There is not even an indirect dictum in the Keller case that the Delaware Supreme Court was of opinion that, under the power granted by Sec. 26 of the Delaware Corporation Law, Rev.Code 1935, § 2058, the Class A stock, per se, could not validly be stripped of its preferences in futuro under the Delaware decisional law.[4] Once the plan of reclassification became operative, it became valid

---

2 It may be argued also that there was a tortious conversion of plaintiff's shares under the doctrine of Drug, Inc., v. Hunt, Receiver, 5 W.W.Harr. 339, 35 Del. 339, 168 A. 87.

3 See, Findings of Fact Nos. 28, 29 in 51 F.Supp. 655, at page 660.

4 See Goldman v. Postal Telegraph, Inc., D.C.Del., 52 F.Supp. 763, and Barrett et al. v. Denver Tramway Corporation, D.C.Del., 53 F.Supp. 198, where the writer discusses, at length, what plans of reclassification affecting "preferences" have been held valid under the Delaware Corporation Law.

and binding on all stockholders who had exchanged their shares in accordance with the provisions of the plan. Frank v. Wilson & Co., supra. In fact, it appears that the Delaware courts have held that the plan became binding on all non-consenting stockholders on or after February 23, 1935. See, Keller v. Wilson & Co., 21 Del.Ch. at page 413 and 190 A. at page 125. Cf. Consolidated Film Industries v. Johnson, 22 Del.Ch. 407, at page 413, 197 A. 489, at page 492. Accordingly, I think that the decree should provide that plaintiff deliver her shares in exchange for new common stock, in accordance with the provisions of the plan.

(C) A further argument is made by defendant. If the court should decide the amendment valid, as I have, in futuro, then a decree should be entered directing plaintiff to exchange her Class A shares for common, without directing the payment, in addition, of accrued dividends which had accumulated up to the time of the amendment for the reason that, in determining the number of shares of common to be given for the A stock and the accumulated dividends accrued thereon, the amount of such accrued dividends had been taken into consideration, under the plan, and was reflected in the number of shares of common to be given for each share of A stock, viz., five shares of common for one share of Class A. Such a consideration may have been given to the amount of common stock the Class A shareholders should receive to compensate them for their accrued dividends, and the distribution in its larger aspects may be fair. But, this is all wide of the mark for the particular plan agreed upon is illegal as to dissenting shareholders. They are entitled to their accrued dividends before anything is paid to common. If this operates to disrupt the nice distribution under the plan, it is merely the price which must be·paid for effecting an illegal plan. Neither the defendant who perfected the illegal plan, nor the shareholders who assented to it, have a standing to complain because the dissenting shareholders demand their full rights under the statute.

■■ Accordingly, I conclude that when plaintiff is directed to make exchange of her Class A stock into common stock, she is also entitled to accrued and unpaid dividends due the Class A stock as of February 23, 1935 which on the basis of $21.25 a share amounts to $10,625. As plaintiff will take new common stock nunc pro tunc, she is entitled to dividends declared on the common stock since 1935.

■ Where no answer may be found in the Delaware decisions as to the ultimate relief to be granted under the doctrine of Keller v. Wilson & Co., supra, I am simply attempting to decide in advance what the Delaware courts would do if the question of a similar decree were before them. If the nature of the relief sought here constitutes an application of an equitable remedy, then I am free to employ an independent view of what plaintiff is entitled to without resort to the Delaware law under the doctrine of Black & Yates v. Mahogany Ass'n, 3 Cir., 129 F.2d 227.[5]

■ One question remains. Plaintiff asks for interest on the amounts she will receive for her accrued and unpaid dividends from the respective dates when such dividends were due. I can find no authority in the Delaware law which entitles her to such an item. At most, she is entitled on the sums to be found in the monetary portions of the decree to be entered to interest from the date of entry of the full decree in the case at bar. Missouri-Kansas Pipe Line Co. v. Warrick, Del.Ch., 22 A.2d 865.

The proposed decree may be modified in accordance with the views expressed herein and re-submitted.

---

[5] See Goldman v. Postal Telegraph, Inc., D.C.Del., 52 F.Supp. 763, and Barrett et al. v. Denver Tramway Corporation, D.C., Del., 53 F.Supp. 198, for discussion as to the requirements of following state law in these circumstances.