EDWARD F. ROMER, JOSEPHINE M. ROMER and
FRANK W. INWALLS,

*vs.*

PORCELAIN PRODUCTS, INC., a corporation created by and
existing under the laws of the State of Delaware,
ROLLAND E. DALTON, GEORGE C. PRICE and
MARSDEN H. HUNT.

*New Castle, July 28, 1938.*

*Clarence A. Southerland* and *Paul Leahy,* of the firm of Ward & Gray, for complainants.

*C. Edward Duffy,* of the firm of Hastings, Stockly &

Duffy, and Homer S. Adams, of Parkersburg, W. Va., for defendant.

THE CHANCELLOR: The Supreme Court of this State in *Keller, et al., v. Wilson & Co., Inc.,* 21 *Del. Ch.* 391, 190 *A.* 115, held that it is beyond the power of a Delaware corporation created prior to the amendment of the act of 1927 (35 *Del. Laws, c.* 85) so to amend its charter as to reclassify its stock in a way that would extinguish the right of a dissenting preferred stockholder to receive in cash the arrearages of dividends which had accumulated on his shares as stipulated in the charter, before dividends on junior stock could be paid. The same rule applies to a corporation created after said amendment of 1927. The Supreme Court so held in *Consolidated Film Industries, Inc. v. Johnson,* 22 *Del Ch.* 407, 197 *A.* 489, affirming 22 *Del. Ch.* 267, 194 *A.* 844. The rule of the *Keller Case* is therefore applicable to all corporations existing under the act regardless of when they were created, and so is applicable to the defendant.

But the amendment which falls under the condemnation of *Keller, et al., v. Wilson & Co., Inc., supra,* is not void absolutely. If the stockholders are unanimous in its adoption, it is binding. A stockholder is barred from complaining against it by the estoppel of his acquiescence or by circumstances showing laches in the assertion of his objection. *Trounstine v. Remington-Rand, Inc.,* 22 *Del. Ch.* 122, 194 *A.* 95, decided by this court on July 21, 1937.

The defendant contends that the delay by the complainants of four and one-half years after the amendment was adopted before they filed their bill, is such a delay as under the circumstances ought to bar the complainants from maintaining their suit. When a corporation takes important action of the kind here challenged, action which involves a complete change in its capital structure and which alters in a radical way the character and rights at-

taching to its shares in the future, it would seem that there ought to come a time when it could be safely said that the action, though originally subject to attack for want of power, has nevertheless ,passed into the settled status of an accepted fact. The desirability of repose to fundamental questions vitally affecting the corporation's future welfare and the great desideratum of certainty as to the exact character and rights which belong to its shares of stock, not only from the view point of the stockholders who might desire to sell their stock but of other persons who contemplate buying it, as well as from the view point of the corporation, forcefully suggest that there ought to come a time when it could be said with assurance that the status of the rights and burdens attaching to the corporation's securities is definitely fixed. It is unreasonable that an unconsenting stockholder who has béen fully and promptly pre-advised of what was proposed to be done and the reasons therefor and who, after the act, was amply informed thereof, should be permitted to sit idly by to await the developments of the future in order to determine what course of action it would be best for him to pursue and then, according as his personal interests rather than those of the corporation and other stockholders would suggest, seek to reach back over the past and attack what every one had a right to suppose had become à matter of mere academic and historical interest. Where action affecting numerous persons, though illegal, is susceptible of ratification, he who desires to object thereto owes some duty to the others to be diligent according as circumstances would suggest in taking his position in respect thereto.

Now in the instant case, the complainants waited over four and one-half years before filing their bill. They waited fully three and one-half years before even expressing to the corporation a demand that the amendment be regarded as inoperative upon them insofar as the cumulations on the preferred stock were concerned. Through the period of

that three and one-half years, Romer, who appears from the correspondence to have been the spokesman not only for himself but for his wife and Inwalls, the other complainant, said nothing to indicate his dissent from the amendment.

In fact on the one occasion when he approached the question, viz., in his letter of March 28, 1934, he indicated his acquiescence by saying that if the sixty shares of preferred and the sixty shares of common which he and his wife held were to receive sixty shares of common, as he had understood and as to which he desired to be assured, he hoped to have the stock of himself and wife exchanged for the new. The next day he was advised, and correctly so, that his understanding was in accordance with the facts. But Romer then lapsed into his former silence and did nothing.

Over two years later he emerged from his state of silence and demanded the preferred dividends and the dividends which would come to him on the common.

In the meantime the company had, because of the reconstitution of its capital structure effected by the amendment and the reduction of its capital rendered possible thereby, been put in a condition as to surplus which made possible the payment of dividends. The condition of the balance sheet was such that had it not been for the amendment, not only could no dividends have been declared on the common stock at any time down to the date of the filing of the bill, but none also could have been declared on the preferred stock which the complainants were holding.

It seems clear to me that the complainants were shrewdly biding their time and were deliberately playing with the situation.

Furthermore, other persons who relied on the capital structure of the company as fixed and definite in accordance

with the terms of the amendment, bought the common stock during the period of the complainant's silence and inactivity, in complete ignorance of the fact that the complainants were intending to assert a demand which if acceded to would place a burden on the assets and earnings ahead of the common stock's equity. To be sure there were not many shares so purchased in the interval of that period—something over three hundred at prices ranging from fifteen dollars to fifty dollars per share. The interests of the purchasers are of course not large. But such as they are, they are entitled to be protected against damage thereto which, had the complainants been reasonably diligent in asserting their rights, they would be saved.

The defendant stresses the suggestion that, treating Mr. and Mrs. Romer as one, every single stockholder of the defendant at the time the amendment was adopted was the holder of preferred and common stock in units, that is to say, each held the same number of shares of preferred as he did of common. That being so, it is quite correctly said that the amendment which changed each one's holding into a number of common shares equal to one-half of both his preferred and common shares, made no alteration whatever in the equity which each stockholder had in both the capital and the earnings of the corporation. The result would be that as dividends were declared out of earnings, the stockholder as a present holder of common stock would be in position to receive as much in the way of dividends as he would have been in to receive as a holder of both the old preferred and common. The effect of this argument, however, goes only to the fairness and the basis of exchange. I do not see that it has a bearing on the question of power which was adjudged as lacking in *Keller v. Wilson & Co., Inc., supra.*

However that may be, I am of the opinion that the complainants by their inexcusable delay in asserting their

rights under all the circumstances, should not now be heard to repudiate the implication of an acquiescence which it seems to me should be drawn from their conduct.

A decree will be entered dismissing the bill.